# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

JEFFREY WADE PERTEET, )
)
        Plaintiff, )
)
v. ) Case No. CIV-12-222-FHS-SPS
)
CAROLYN W. COLVIN, )
Acting Commissioner of the Social )
Security Administration,[1] )
)
        Defendant. )

## REPORT AND RECOMMENDATION

The claimant Jeffrey Wade Perteet requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the undersigned Magistrate Judge RECOMMENDS that the Commissioner's decision be REVERSED and REMANDED.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

---

[1] On February 14, 2013, Carolyn Colvin became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Colvin is substituted for Michael J. Astrue as the Defendant in this action.

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id.* §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account his age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born on December 25, 1974, and was thirty-five years old at the time of the administrative hearing (Tr. 110). He completed high school and attended a couple years of college (Tr. 328). The claimant has past relevant work as cook, kitchen helper, route driver, and stock clerk (Tr. 343). The claimant alleges that he has been unable to work since May 1, 2001 because of a left knee injury and back injury (Tr. 152).

**Procedural History**

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on April 28, 2009 (Tr. 13). His applications were denied. ALJ Osly F. Deramus conducted an administrative hearing and found that the claimant was not disabled in a written opinion dated October 29, 2010 (Tr. 13-23). The Appeals Council denied review, so the ALJ's written opinion is the final

decision of the Commissioner for purposes of appeal. *See* 20 C.F.R. §§ 404.1481; 416.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He found that the claimant retained the residual functional capacity ("RFC") to perform medium work, limited to performing simple and some complex tasks, and avoiding working with the general public (Tr. 17). The ALJ concluded that the claimant was not disabled because he could return to his past relevant work as a kitchen helper, cook, construction worker, route driver, and stock clerk (Tr. 23).

## Review

The claimant contends that the ALJ erred: (i) by failing to make specific findings regarding the demands of his past relevant work; (ii) by failing to properly analyze the conflicting opinions of the state reviewing physicians; and, (iii) by failing to properly analyze his own credibility. The undersigned Magistrate Judge finds the claimant's second contention persuasive.

The claimant was evaluated twice by state examining physician Dr. Kathleen Ward, Ph.D. The first evaluation occurred on October 18, 2005 (Tr. 204-07). During this first evaluation, the claimant reported that he had never received treatment for psychiatric reasons, but that he had thoughts of death (Tr. 205). During the exam, Dr. Ward noted that the claimant's thought processes were not well organized and his speech was spontaneous and rambling (Tr. 206). The claimant exhibited minor deficits in social

judgment (Tr. 207). Dr. Ward opined that the claimant had a "noted somatic preoccupation and a very unusual interpersonal style, suggestive of perhaps Schizotypal Personality Disorder" (Tr. 207). While Dr. Ward recommended mental health treatment, she also noted that the "claimant has little to no insight and would likely not be amenable to mental health treatment" (Tr. 207).

The second evaluation performed by Dr. Ward was held on June 9, 2009 (Tr. 257-60). During the second exam, the claimant reported that he stays disconnected and has "virtually no socialization outside of the online community" (Tr. 257). The claimant reported that he feels he has no mental health issues (Tr. 258). Dr. Ward noted that the claimant exhibited "some deficits in social judgment and problem solving" (Tr. 259). Dr. Ward again noted that the claimant presented with the same odd interpersonal style as in the previous exam, but also noted that it might not have been "to the degree noted before" (Tr. 259).

State reviewing physician Dr. Diane Hyde, Ph.D. completed a Psychiatric Review Technique on July 9, 2009 (Tr. 274-87). Dr. Hyde opined that the claimant exhibited depression characterized by anhedonia or pervasive loss of interest in almost all activities, sleep disturbance, decreased energy, feelings of guilt or worthlessness, difficulty concentrating or thinking, thoughts of suicide, and hallucinations, delusions, or paranoid thinking (Tr. 277). Dr. Hyde also opined that the claimant demonstrated physical symptoms for which there are no demonstrable organic findings and an unrealistic interpretation of physical signs or sensations associated with the preoccupation

or belief that one has a serious disease or injury (Tr. 280). Finally, Dr. Hyde found that the claimant exhibited inflexible and maladaptive personality traits characterized by oddities of thought, perception, speech and behavior and persistent disturbances of mood or affect (Tr. 281). As a result of these findings, Dr. Hyde concluded that the claimant had moderate limitations in activities of daily living and maintaining social functioning and marked limitations in maintaining concentration, persistence, or pace (Tr. 284). Dr. Hyde also completed a Mental Residual Functional Capacity Assessment in which she opined that the claimant was moderately limited in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances and the ability to work in coordination with or proximity to others without being distracted (Tr. 270). Dr. Hyde also found that the claimant was markedly limited in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods (Tr. 271). In her written remarks, Dr. Hyde stated that the claimant was "unable to consistently concentrate, persist, and pace to complete [a] normal work day or work week" (Tr. 272).

On August 15, 2009, state reviewing physician Dr. Paul Cherry, Ph.D. completed a Psychiatric Review Technique in which he opined that the claimant's symptoms fell under the umbrella of personality disorders and found that the precise disorder was Cluster A traits (Tr. 296). Dr. Cherry found that the claimant had moderate limitations in his activities of daily living and maintaining social functioning and mild limitations in

maintaining concentration, persistence, and pace (Tr. 299). Dr. Cherry also completed a Mental Residual Functional Capacity Assessment in which he found that the claimant was moderately limited in the following categories: i) the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; ii) the ability to work in coordination with or proximity to others without being distracted by them; iii) the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; iv) the ability to interact appropriately with the general public; v) the ability to accept instructions and respond appropriately to criticism from supervisors; and vi) the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes (Tr. 307-08).

One month later, on September 15, 2009, the case was referred for further review by mental health specialists (Tr. 312). On September 16, 2009, state reviewing physician Dr. Karen Kendall, Ph.D. submitted a Case Analysis in which she wrote the following:

> In working on this case with trainee MC, Dr. Hyde, I agreed with her that this [claimant] has [a] pattern of functioning and presentation that is odd clinically and appears unable to work. We both have such patients with similar presentation that on closer follow up and care were severely limited by mental disorder.

(Tr. 313). Dr. Kendall also noted, however, that they had limited information about the claimant, and since the claimant lives in a part of Oklahoma with limited mental health services, there is no medical evidence of record (Tr. 313). Further, Dr. Kendall wrote

that their "experience and opinion varies from [Dr. Cherry's opinions]" but that they had "no further evidence to provide" (Tr. 313). State reviewing physician Dr. Carolyn Goodrich, Ph.D. also submitted a Case Analysis and wrote that she agreed with Dr. Cherry's August 15, 2009 opinion (Tr. 314).

Social Security Ruling 96-6p indicates that the ALJ "must consider and evaluate any assessment of the individual's RFC by a State agency medical or psychological consultant and by other program physicians and psychologists." 1996 WL 374180, at *4. These opinions are to be treated as medical opinions from non-examining sources. *Id.* at *2. Although the ALJ is not bound by an agency physician's determination, he cannot ignore it and must explain the weight given to the opinion in his decision. *Id. See also Valdez v. Barnhart*, 62 Fed. Appx. 838, 841 (10th Cir. 2003) ("If an ALJ intends to rely on a non-examining source's opinion, he must explain the weight he is giving it.") [unpublished opinion], *citing* 20 C.F.R. § 416.927(f)(2)(ii).

In this case, the only opinions regarding the claimant's mental impairments come from state agency psychologists. After discussing the opinions, the ALJ stated only that he was affording substantial weight to the opinions of Dr. Goodrich and Dr. Cherry "[b]ecause such opinion is supported by the evidence as a whole" (Tr. 21). But the opinions of Dr. Hyde and Dr. Kendall were based on the same reports, *i. e.*, Dr. Ward's 2005 and 2009 evaluations, and the ALJ did not explain why he chose to accept the opinions of Dr. Goodrich and Dr. Cherry over those of Dr. Hyde and Dr. Kendall, nor did he explain how the latter were *inconsistent* with the evidence of record. Thus, the ALJ's

purported basis for finding the opinions of Dr. Goodrich and Dr. Cherry persuasive is too vague for the Court to review. *See Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004) ("Because the ALJ failed to explain or identify what the claimed inconsistencies were between Dr. Williams's opinion and the other substantial evidence in the record, his reasons for rejecting that opinion are not 'sufficiently specific' to enable this court to meaningfully review his findings."), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).

Accordingly, the decision of the Commissioner should be reversed and the case remanded to the ALJ for a proper analysis of the medical opinions. On remand, the ALJ should reconsider those opinions in accordance with the appropriate standards and determine what impact, if any, such reconsideration has on the claimant's ability to work.

**Conclusion**

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and that the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED and the case REMANDED for further proceedings not inconsistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 13th day of September, 2013.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma